*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

PETE MUSICO,

   Defendant-Appellant.

UNPUBLISHED
July 20, 2026
10:15 AM

No. 364567
Jackson Circuit Court
LC No. 2020-003173-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

PAUL EDWARD BELLAR,

   Defendant-Appellant.

No. 364572
Jackson Circuit Court
LC No. 2020-03171-FH

---

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

  In these consolidated appeals,[1] defendants Pete Musico and Paul Bellar appeal as of right their jury-trial convictions of providing material support for an act of terrorism, MCL 750.543k(1)(b), commission of a felony motivated by gang membership or association (gang-membership felony), MCL 750.411u(1); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. For the reasons stated in this opinion, we vacate their convictions and remand for further proceedings.

---

[1] *People v Musico*, unpublished order of the Court of Appeals, entered January 26, 2023 (Docket No. 364567).

# I. BASIC FACTS

In the summer of 2020, Adam Fox and Barry Croft, Jr. devised an elaborate plot to kidnap Michigan Governor Gretchen Whitmer. By October 2020, Fox and Croft had been arrested on federal charges of conspiracy related to their plot, and they were ultimately convicted of multiple federal charges, including conspiracy to kidnap Governor Whitmer and conspiracy to use a weapon of mass destruction.[2] Musico and Bellar's convictions—along with the convictions of their co-defendant Joseph Morrison[3]—arose from their alleged roles in Fox's and Croft's scheme.

Musico, Bellar, and Morrison were tried together before a single jury, which found each man guilty of all charges. The basic facts underlying all three defendants' convictions were recently set forth in *People v Morrison*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 364651); slip op at 1-3:

> [Morrison] created a "Wolverine Watchmen" Facebook page on November 25, 2019. He described the Watchmen as "a group of patriots to network and assemble and recruit like-minded individuals. Develop QRFs [quick-reaction (or response force)], and squad tactics," and he instructed group members to "only add people you trust." Among those not to be trusted were "boot lickers," "cops," and "feds." In the days that followed, [Morrison] identified himself as a unit commander, and he instructed group members to move all planning communications to Wire [a communications platform that provides end-to-end encryption and an option to automatically delete messages] and to message him their usernames to add to the chat. He also indicated that he was in Michigan, living under Governor Whitmer's "tyranny," and that he was "fixing to change all that."
>
> On March 7, 2020, Dan Chappel was scrolling through Facebook when the Wolverine Watchmen was recommended as a group in which he might be interested. Chappel was an army veteran who had maintained an interest in firearms and was looking for pro-Second Amendment people with whom he could train. Chappel was admitted into the group and told that, if he wanted to train, he should download Wire and undergo a vetting process. Chappel downloaded Wire, passed the vetting, and was added to the Watchmen's main Wire chat.
>
> After joining the chat, Chappel saw a post advocating reverse red flag operations [i.e. operations on the homes of law enforcement officers in retaliation for arrests made under red-flag laws] and suggesting that members download a hunting application that would allow users to find the addresses of law enforcement officers. Chappel became concerned that the objective of the group's training was to kill law enforcement personnel, and he relayed his concern to a friend who was

---

[2] *United States v Fox*, 134 F4th 348, 365 (CA 6, 2025).

[3] Although Morrison's appeal was originally consolidated with the instant appeal, Morrison filed a motion for deconsolidation in this Court. That motion was granted. *People v Morrison*, unpublished order of the Court of Appeals, entered June 17, 2025 (Docket No. 364651).

a local law enforcement officer. The information eventually made its way to FBI Special Agents Jason Chambers and Henrik "Hank" Impola, who recruited Chappel as a "confidential human source." Chappel gave the agents access to his Wire and Facebook accounts, which allowed the agents to see the Watchmen's communications to Chappel.

Over the next several months, Chappel reported the Watchmen's activities to the FBI. He also wore a recording device to Watchmen events that allowed the FBI to monitor the events live. Chappel communicated with Watchmen on Wire, became a leader of the group, took an active role at a number of field training exercises at [Morrison's] property in Munith, attended rallies at the state capitol, attended national meetings in Wisconsin and Ohio, witnessed the progression of [Morrison's, Musico's, and Bellar's] association and communications with Croft and Fox, and participated in QRF deployments and two surveillances of Governor Whitmer's vacation residence. On the basis of information gleaned from the FBI's access to Watchmen communications and provided by Chappel, [Morrison, Musico, and Bellar were] arrested on October 7, 2020 and eventually charged with one count each of gang-membership felonies, providing material support for terrorist acts, and felony-firearm. [footnotes omitted.]

As related to the charge of providing material support for an action of terrorism, the jury had been instructed:

An [] act of terrorism is committed or attempted to be committed or attempting to commit the violent felony of murder, assault with intent to commit murder, assault with intent to commit great bodily harm, arson or *kidnapping* that would be dangerous to human life and was intended to intimidate or coerce the civilian population or influence or affect the conduct of the government or a unit of government through intimidation or coercion.

It was further instructed that "violent felonies" are murder, assault with intent to commit murder, assault with intent to commit great bodily harm, arson, and kidnapping.

Morrison appealed his convictions to this Court, arguing that "kidnapping" does not constitute an "act of terrorism," as that term is defined by Michigan's Antiterrorism Act (the Act), MCL 750.543a *et seq*. See *Morrison*, ___ Mich App at ___; slip op at 3. He contended that, because the jury instructions impermissibly allowed for a conviction based upon an underlying kidnapping offense, his convictions should be vacated. Following oral arguments in *Morrison*, Musico moved to file a supplemental brief in this Court raising that same issue. While his motion was pending, the *Morrison* Court issued a published opinion agreeing with Morrison's argument, vacating his convictions because of instructional error, and remanding for further proceedings. *Id*. at ___; slip op at 9.

Subsequently, we granted Musico's motion to file a supplemental brief and directed him to file a supplemental brief addressing *Morrison*'s effect on his appeal.[4] Additionally*,* on our own motion, we ordered Bellar to file a supplemental brief addressing *Morrison*'s effect on his appeal.[5] See MCR 7.216(A)(3) (providing that the Court of Appeals "may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . permit amendment of or additions to the grounds for appeal").

In the supplemental briefing, the parties agree that, under *Morrison*, a conviction of providing material support for an act of terrorism cannot be based upon a predicate offense of kidnapping. The prosecution, however, maintains that this Court should not consider the issue raised in *Morrison* because it was not raised in Musico's and Bellar's original appellate briefs. Further, Musico acknowledges that the *Morrison* Court concluded that it need not address a sufficiency-of-the-evidence challenge because there was an instructional error requiring reversal. He nevertheless argues that we should vacate his convictions on sufficiency-of-the-evidence grounds instead of instructional error. As a result, Musico maintains that retrial in his case is barred under the Double Jeopardy Clauses of the United States Constitution and the Michigan Constitutions. See US Const, Am V and Const 1963, art 1, § 15.

## II. DISCRETION TO ADDRESS UNRAISED ISSUES

We first address the prosecution's argument that we should not consider the issue resolved in *Morrison* in these consolidated appeals because they were not raised in Musico's and Bellar's briefs on appeal. The prosecution suggests that instead of addressing the issue at this juncture, we should leave Musico and Bellar to seek post-conviction relief under MCR 6.501 *et seq*. We disagree. We have the discretion to address issues that were not raised by the parties. *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004). We have already exercised that discretion by granting Musico's motion to raise the issue from *Morrison* in a supplemental brief. Moreover, although Bellar did not file a motion seeking to raise the *Morrison* issue, we sua sponte exercised our discretion under MCR 7.216(A)(3) to consider that issue in Bellar's appeal.

---

[4] *People v Musico*, unpublished order of the Court of Appeals, entered June 10, 2026 (Docket No. 364567).

[5] *People v Bellar*, unpublished order of the Court of Appeals, entered June 10, 2026 (Docket No. 364572).

## III. *MORRISON*

The parties agree that application of the decision in *Morrison* mandates that Musico's and Bellar's convictions be vacated.[6]  We agree.  As a published opinion of this Court, *Morrison* has precedential effect under the rule of stare decisis.  See MCR 7.215(C)(1).[7]

The *Morrison* Court considered whether an underlying kidnapping offense could support Morrison's conviction of providing material support for an act of terrorism under MCL 750.543k(1)(b).  *Morrison*, ___ Mich App at ___; slip op at 3.  To resolve that issue, the *Morrison* Court turned to the language used in the Act as well as the kidnapping statute, MCL 750.349.  The *Morrison* Court held that (1) the Legislature's definition of "act of terrorism" required a finding that the "act" be a "violent felony," see MCL 750.543b(a)(*i*); (2) that the Legislature's definition of "violent felony" required the felony to include as "an element . . . the use, attempted use, or threatened use of physical force against an individual," see MCL 750.543b(h); (3) that the Legislature removed "force" as an element from kidnapping in 2006, see 2006 PA 160; and (4) that the kidnapping statute no longer includes "force" as an element, see MCL 750.349.  See *Morrison*, ___ Mich App at ___; slip op at 4-5.  The *Morrison* Court reasoned that "[b]ecause the 'use, attempted use, or threatened use of physical force' is not an element of kidnapping, kidnapping is not a 'violent felony' falling within the definition of an 'act of terrorism' under MCL 750.543b(a).  *Id*. at ___; slip op at 6.

The *Morrison* Court next noted that the jury had been instructed that the offense of providing material support for an act of terrorism could be predicated on kidnapping as the underlying act of terrorism.  *Id*. at ___; slip op at 8.  The Court held that that instruction was erroneous because, as defined by MCL 750.543b(h), kidnapping is not a "violent felony" that can support a conviction under MCL 750.543k.  *Id*.  The *Morrison* Court concluded:

> That [instructional] error requires reversal because it allowed the jurors to find [Morrison] guilty on an invalid basis.  The verdict form asked only whether [Morrison] was guilty (or not) of "Providing Material Support for an Act of Terrorism."  Therefore, we cannot determine the extent to which the jury based its conviction on the underlying felony of kidnapping as opposed to murder or some other offense.  See *People v Urbanski*, 348 Mich App 90, 111; 17 NW3d 430 (2023) ("[A] conviction cannot stand if a reviewing court cannot discern whether the conviction was based on a theory for which there was insufficient evidence.").  Given that the trial court specifically instructed the jury to consider kidnapping as a violent felony and that the jury heard considerable testimony about the plot to

---

[6] Because the conviction for providing material support for an act of terrorism is the underlying felony for the gang-membership felony and the felony-firearm convictions, those convictions must also be vacated.  See *Morrison*, ___ Mich App at ___; slip op at 9.

[7] We decline the prosecution's invitation to express disagreement with the holding in *Morrison*. Moreover, as noted above, Morrison, Musico, and Bellar were tried jointly before a single jury. Thus, even if *Morrison* were unpublished, as a practical matter, *Morrison*'s holding that the jury was improperly instructed necessarily means that the jury was improperly instructed in this case.

kidnap Governor Whitmer, the likelihood that [Morrison] was actually convicted, at least in part, on an invalid basis tainted the jury's verdict. See *id*. at 114 ("If there is no way to know if the jury chose the impermissible theory then it follows that there is a reasonable probability that the jury did choose the impermissible theory."). [*Morrison*, ___ Mich App at ___; slip op at 8-9.]

Having concluded that reversal was required based upon the instructional error, the *Morrison* Court went on to hold that remand without addressing Morrison's sufficiency-of-the-evidence challenge was proper. *Id*. at ___; slip op at 9. The Court reasoned:

> Because the reasonable probability that the jury chose, at least in part, the impermissible theory requires reversal regardless of [Morrison's] guilt or innocence in relation to the other theories, see *id*., we remand for a new trial without addressing the sufficiency of the evidence for [Morrison's] convictions under any other theory. See *Evans v Mich*, 568 US 313, 318-319; 133 S Ct 1069; 185 LE2d 124 (2013) (holding that a retrial after "rulings on questions that are unrelated to factual guilt or innocence" does not violate the Double Jeopardy Clause) (quotation marks and citation omitted); *People v Thompson*, 424 Mich 118, 126; 379 NW2d 49 (1985) (noting that the Double Jeopardy Clause of the Michigan Constitution provides the same protections as the federal clause). [*Id*.]

We agree with the parties that this Court is bound by the *Morrison* Court's interpretation of MCL 750.543k(1)(b) (stating elements of providing material support for an act of terrorism), MCL 750.543b(a) (defining "act of terrorism"), MCL 750.543b(h) (defining "violent felony"), and MCL 750.349 (stating the elements of kidnapping). We are likewise bound by the determination that kidnapping is not a violent felony that can permissibly form the basis for a conviction of providing material support for an act of terrorism. Finally, the jury verdict in this case was tainted by the same erroneous instructions as the jury in *Morrison*. Although Musico requests that we vacate his convictions on sufficiency-of-the-evidence grounds, we are bound by the *Morrison* Court's determination that it is instead proper to vacate the convictions based upon the instructional error. Because that error is unrelated to factual guilt or innocence, the reversal does not fall foul of the Double Jeopardy Clause. See *Morrison*, ___ Mich App at ___; slip op at 9.

In sum, pursuant to *Morrison*, we vacate Musico's and Bellar's convictions and remand for further proceedings without first addressing their arguments related to the sufficiency of the evidence supporting their convictions of providing material support for an act of terrorism.

## IV. REMAINING ISSUES

Because we must vacate Musico's and Bellar's convictions under *Morrison*, we do not address many of the remaining issues raised in their briefs on appeal and in Musico's supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Two issues, however, must be addressed because, if meritorious, they would afford greater relief than that mandated by *Morrison*.

A. CONSTITUTIONALITY OF MCL 750.653k

We first consider Musico's argument that MCL 750.543k is unconstitutional facially and as applied to him because it is overbroad and vague. This issue is unpreserved because it was not raised in the trial court. See *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). Unpreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights. *Id.*

Statutes are presumed to be constitutional, and courts have a duty to construe them as constitutional unless their unconstitutionality is clearly apparent. *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013). The constitutionality of a statute must be determined on the basis of the provisions of the act itself. *Judicial Attorneys Ass'n v State*, 459 Mich 291, 304; 586 NW2d 894 (1998). For a facial challenge, the challenger must establish that no set of circumstances exists under which the statute would be valid. *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014). "However, in the First Amendment context, a facial challenge may be sufficient if it establishes that the statute prohibits constitutionally protected speech or conduct and is thus overbroad." *People v Burkman*, 513 Mich 300, 326-327; 15 NW3d 216 (2024). An as-applied challenge to the constitutionality of a statute "considers the specific application of a facially valid statute to individual facts." *Promote the Vote v Secretary of State*, 333 Mich App 93, 117; 958 NW2d 861 (2020) (quotation marks and citation omitted).

MCL 750.543k(1)(b) provides as follows:

> (1) Any person who does any of the following is guilty of a crime as punishable in subsection (2):

> * * *

> (b) Knowingly provides material support or resources to a person knowing that the person will use that support or those resources in whole or in part to plan, prepare, carry out, facilitate, or avoid apprehension for committing an act of terrorism against the United States or its citizens, this state or its citizens, or a political subdivision or any other instrumentality of this state or of a local unit of government.

" 'Material support or resources' means currency or other financial securities, financial services, lodging, training, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, including any related physical assets or intangible property, or expert services or assistance." MCL 750.543b(d).

Musico contends that MCL 750.543k(1)(b) is facially overbroad because it criminalizes "the dissemination of information and ideas." We disagree. MCL 750.543k(1)(b) does not prohibit pure political speech; it does not prohibit a person from criticizing the government, politicians, or police, nor does it necessarily prohibit a person from speaking out on behalf of civil unrest. Rather, like the federal material-support statute, 18 USC 2339B, MCL 750.543k(1)(b) criminalizes only a subset of speech-based conduct, i.e., speech-based support or resources that are knowingly provided to a person knowing that the person will use it for the purposes described by the statute. See *Holder v Humanitarian Law Project*, 561 US 1, 26; 130 S Ct 2705; 177 L Ed

2d 355 (2010) (observing that § 2339B prohibits only a narrow category of speech, i.e., speech "to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations"). The United States Supreme Court has held that the government's prohibition on knowingly providing speech-based material support to organizations involved in terrorism does not violate the speaker's First Amendment right to free speech. *Id*. at 39. In light of the foregoing, Musico has not established that MCL 750.543k(1)(b) is unconstitutionally overbroad on its face. See *Wilder*, 307 Mich App at 556; *Burkman*, 513 Mich at 326-327.

Musico relies on *Brandenburg v Ohio*, 395 US 444; 89 S Ct 1827; 23 L Ed 2d 430 (1969) to imply that, in order to pass constitutional muster, MCL 750.543k(1)(b) must require speech-based support or resources to be "directed to and likely to produce imminent lawless actions." The defendant in *Brandenburg*, 395 US at 446-447, was a Ku Klux Klan leader who made speeches to other Klansmen denigrating Black and Jewish people and calling for a march on Washington in support of the "Caucasian race." The defendant was convicted under a state statute for " '[advocating] the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform and for 'voluntarily assembl(ing) with any society, group, or assemblage of persons formed to teach or advocate the doctrines of criminal syndicalism.' " *Id*. at 444-445. The United States Supreme Court observed on appeal that constitutional guarantees of free speech did not allow a government to prohibit a person from advocating the use of force or the violation of law except when "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id*. at 447. A statute that failed to distinguish between mere advocacy and "preparing a group for violent action and steeling to it such action . . . impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments." *Id*. at 448.

*Brandenburg* does not apply to MCL 750.543k(1)(b) because, unlike the state law in *Brandenburg*, MCL 750.743k(1)(b) does not criminalize mere advocacy, it criminalizes knowingly providing material support or resources. See *United States v Al-Timini*, 164 F4th 292, 304 (CA 4, 2026) ("The question of whether criminal conduct is 'imminent' is relevant for constitutional purposes only where, as in *Brandenburg* itself, the government attempts to restrict advocacy.") (quotation marks and citation omitted). Although the prosecution alleged that Musico provided material support that was speech-based, e.g., expert assistance, as stated, the United States Supreme Court has upheld the federal statute prohibiting such activity against a First Amendment challenge. See *Holder*, 561 US at 39.

For the same reasons, we find unavailing Musico's reliance on *Hess v Indiana*, 414 US 105, 108; 94 S Ct. 326; 38 L Ed2d 303 (1973). Musico directs us to *Hess* to support his argument that MCL 750.543k(1)(b) is unconstitutional as applied to him because the prosecutor sought to establish that he had provided material support through his " 'advocacy of illegal action at some indefinite time in the future.' " *Hess* is generally seen as clarifying *Brandenburg*, making "explicit what was implicit in *Brandenburg*: a state cannot constitutionally sanction 'advocacy of illegal action at some indefinite future time.' " *McCoy v Stewart*, 282 F3d 626, 631 (CA 9, 2002), quoting *Hess*, 414 US at 108. As already indicated, the focus of MCL 750.543k(1)(b) is on knowingly providing material support, not mere advocacy. Because such conduct is not subject to *Brandenburg*'s imminence requirement, it stands to reason that it would not be subject to *Hess*'s clarification of that requirement.

Lastly, Musico claims that MCL 750.543k(1)(b) is unconstitutionally vague. "The void for vagueness doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law." *People v Lawhorn*, 320 Mich App 194, 198; 907 NW2d 832 (2017), citing US Const, Am XIV; Const 1963, art 1, § 17. "To determine whether a statute is unconstitutionally vague, this Court examines the entire text of the statute and gives the words of the statute their ordinary meanings." *Id*. (quotation marks and citation omitted). "A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms." *People v Miller*, 326 Mich App 719, 738; 929 NW2d 821 (2019).

Musico argues that "[b]ecause Michigan's statute employs broad and undefined speech-based categories—including 'training,' 'expert assistance,' and 'personnel'—without any of the narrowing definitions that federal courts deemed constitutionally required, MCL750.543k(1)(b) is unconstitutionally vague and enabled [him] to be arbitrarily prosecuted for his unpopular views." Although he asserts in conclusory fashion that the unconstitutional vagueness of the statutory terms permitted his prosecution for unpopular ideas, he failed to raise any argument that the statutory terms are "unconstitutionally vague with regard to the facts of this case and his specific conduct." See *People v Knapp*, 244 Mich App 361, 374 n 4; 624 NW2d 227 (2001).

In *Knapp*, the defendant challenged as unconstitutionally vague the term "position of authority" in the second-degree criminal sexual conduct statute, MCL 750.520c(1)(b)(*iii*). The defendant did not raise the issue in the trial court and, on appeal, the defendant failed to show how the statute was unconstitutionally vague as to the facts of his case. Instead, the defendant "present[ed] only hypothetical situations in which the statute might be susceptible to misinterpretation." *Id*. Because the allegation of error was not preserved and the defendant had not raised on appeal any argument that the statutory term was vague with regard to the facts of his case, this Court declined to reach the merits of his allegation and deemed the issue abandoned. *Id*. The present case is similar. Musico did not raise his vagueness argument in the trial court, and he did not show how the statute was unconstitutionally vague as applied to the facts of his case, other than to imply that the terms' lack of clarification allowed the prosecutor to prosecute him for his unpopular views. We also note that the United States Supreme Court, in *Holder*, rejected nearly identical vagueness challenges to terms in the federal material-support statute such as training, expert assistance, and personnel. *Holder*, 561 US at 18-26. Accordingly, Musico has not met his burden under plain-error review to show an obvious error that affected his substantial rights.

To summarize, Musico's challenges to the constitutionality of MCL 750.543k(1)(b) fail. His facial challenge fails because he has not established that MCL 750.543k(1)(b) is overbroad; his as-applied challenge fails because the imminence requirement articulated in *Brandenburg* and clarified in *Hess* does not apply to the criminalization of speech-based material support, and his void-for-vagueness challenge fails because he did not show how the statute was unconstitutionally vague as applied to the facts of his case, other than to imply, without specificity, that the Michigan Legislature's failure to more narrowly define certain speech-based forms of material support allowed the prosecutor to prosecute him for his unpopular views.

## B. SUFFICIENCY OF EVIDENCE OF GANG-MEMBERSHIP FELONIES

Musico also argues that there was insufficient evidence to sustain his conviction of gang-membership felony under MCL 750.411u. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires that, when the evidence is viewed in the light most favorable to the prosecution, a reasonable trier of fact could find each element of the crime established beyond a reasonable doubt. *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011).

MCL 750.411u provides:

(1) If a person who is an associate or a member of a gang commits a felony or attempts to commit a felony and the person's association or membership in the gang provides the motive, means, or opportunity to commit the felony, the person is guilty of a felony punishable by imprisonment for not more than 20 years. As used in this section:

(a) "Gang" means an ongoing organization, association, or group of 5 or more people, other than a nonprofit organization, that identifies itself by all of the following:

(*i*) A unifying mark, manner, protocol, or method of expressing membership, including a common name, sign or symbol, means of recognition, geographical or territorial sites, or boundary or location.

(*ii*) An established leadership or command structure.

(*iii*) Defined membership criteria.

Musico argues that the Wolverine Watchmen were not a gang because it was a "nonprofit organization." The term "nonprofit organization" is not defined by the statute. Musico suggests however, that, so long as a group does not attempt or intend to "generate a profit," it should be considered to be a nonprofit organization. We agree that the definition of "nonprofit organization" requires a finding that the group's purpose is nonpecuniary. However, we also agree with the prosecution that the organization must also serve a lawful purpose. By statute, a nonprofit corporation may not be formed for an unlawful purpose. See MCL 450.2251 and MCL 450.2209(1). Interpreting MCL 750.411u as exempting a group that exists for an unlawful, but nonpecuniary purpose, from the definition of "gang" would lead to absurd results. See *People v Tennyson*, 487 Mich 730, 741; 790 NW2d 354 (2010) (recognizing that statutes must be "construed to prevent absurd results.").

Because the definition of "nonprofit organization" requires that the organization be formed for both a nonpecuniary purpose and a lawful purpose, we conclude that, viewed in the light most favorable to the prosecution, there was sufficient evidence presented that the Wolverine

Watchmen's purpose, although nonpecuniary, was unlawful. As a result, the jury could have found that it was not exempted from the definition of gang under MCL 750.411u.[8]

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin

---

[8] We note that the jury was not instructed that the definition of "gang" excluded nonprofit organizations. If charges of gang-membership felony are pursued on remand, the jury should be instructed on that part of the definition of "gang."

-11-